IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **DUSTIN SMITH,** | * | |
| Plaintiff, | * | |
| v. | * | Civ. No. DLB-25-25 |
| **SENTRYLINK, LLC,** | * | |
| Defendant. | * | |

**MEMORANDUM OPINION**

Dustin Smith filed this action against SentryLink, LLC ("SentryLink"), alleging that SentryLink misrepresented his criminal history to a company that was considering him for employment, in violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* SentryLink has filed a motion to dismiss, arguing that Smith fails to state a claim upon which relief can be granted. For the reasons set forth below, the motion is denied.

I.   **Background**

The following allegations are from Smith's amended complaint, as well as the consumer report attached to SentryLink's motion. Because Smith does not dispute the authenticity of the report, and his amended complaint explicitly relies on it, the Court may consider the report in ruling on SentryLink's motion to dismiss. *See Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606–07 (4th Cir. 2015).

Smith resides in Kentucky. ECF 13, at 1. He has no criminal record. *Id.* at 2. In or around May 2024, Smith applied for a position with Rural Transit Enterprises Coordinated, Inc. ("RTEC").[1] *Id.* As part of the application process, Smith authorized RTEC to obtain a consumer

---

[1] The Court takes judicial notice of the fact that RTEC is located in Mount Vernon, Kentucky. *See Home*, RTEC, https://ridertec.org (last visited Nov. 25, 2025).

report about him. *Id.* RTEC then purchased a consumer report from SentryLink, which has a principal place of business in Greenbelt, Maryland. *Id.* at 1–2.

The report is dated May 21, 2024 and is titled "NATIONAL CRIMINAL AND OFFENSE REPORT." ECF 15-2, at 1. At the top of the first page is a heading that identifies the "[a]pplicant" as "DUSTIN THOMAS SMITH," followed by Smith's date of birth and the last four digits of his Social Security number. *Id.* The heading also states that the preparer of the report conducted a search of "[a]ll" jurisdictions, "including sex offender registries." *Id.* Beneath this heading is a disclaimer that states in relevant part: "The report does not guarantee the accuracy or truthfulness of the information as to the subject of the investigation, but only that it is accurately copied from public records. Evidence of identity theft may or may not be identified from this report." *Id.*

Over the following pages, the report lists 15 state court convictions, all from Champaign County, Ohio. *Id.* at 1–8. These convictions are for a range of misdemeanor and felony offenses, including breaking and entering, theft, drug possession, and operating a vehicle under the influence. *Id.* All these convictions are under the name of either a "Dustin Michael Smith" or a "Dustin M Smith." *Id.* None of the conviction records specifies the date of birth or Social Security number of the "Dustin M" or "Dustin Michael" Smith to which it refers. *Id.* The report marks each record, however, with an all-caps alert stating "PLEASE NOTE MIDDLE NAME ON RECORD," "PLEASE NOTE MIDDLE INITIAL ON RECORD," or "PLEASE NOTE MIDDLE INITIAL DIFFERENCE." *Id.*

Smith alleges that he is not the "Dustin M Smith" or "Dustin Michael Smith" identified in the report. ECF 13, at 2. Nonetheless, because of this report, Smith's employment with RTEC was delayed by several weeks. *Id.* at 3.

Smith states that the inaccuracies in the report "appear to be caused by [SentryLink] failing to properly review and interpret the relevant public records" and that "[a]ny rudimentary inspection of the public record would reveal the inaccuracies, and show that there is a middle name discrepancy, address discrepancy and other discrepancies in the personally identifying information." *Id.*

On January 3, 2025, Smith filed suit in this Court. ECF 1. He filed an amended complaint on May 16, 2025. ECF 13. In his amended complaint, Smith accuses SentryLink of violating the FCRA, specifically 15 U.S.C. § 1681e(b), which requires a "consumer reporting agency" preparing a "consumer report" to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." *Id.* at 4. He claims that SentryLink delayed his employment opportunities, caused him to lose wages, harmed his reputation, and subjected him to emotional distress. *Id.* at 3. He seeks monetary damages. *Id.* at 4.

SentryLink has filed a motion to dismiss the amended complaint for failure to state a claim. ECF 15. Smith opposes the motion, ECF 16, and SentryLink has filed a reply, ECF 18. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025).

## II.     Standard of Review

Under Rule 12(b)(6), a party may seek dismissal for failure "to state a claim upon which relief can be granted." *Robertson v. Anderson Mill Elementary Sch.*, 989 F.3d 282, 290 (4th Cir. 2021) (quoting Fed. R. Civ. P. 12(b)(6)). To survive the challenge, the opposing party must have pleaded facts demonstrating it has a plausible right to relief from the court. *Lokhova v. Halper*, 995 F.3d 134, 141 (4th Cir. 2021) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A plausible claim is more than merely conceivable or speculative. *See Holloway v. Maryland*, 32 F.4th 293, 299 (4th Cir. 2022). The allegations must show there is "more than a sheer possibility that the

defendant has acted unlawfully." *Int'l Refugee Assistance Project v. Trump*, 961 F.3d 635, 648 (4th Cir. 2020) (quoting *Iqbal*, 556 U.S. at 678). But the claim does not need to be probable, and the pleader need not show "that alternative explanations are less likely" than their theory. *Jesus Christ Is the Answer Ministries, Inc. v. Baltimore Cnty.*, 915 F.3d 256, 263 (4th Cir. 2019) (quoting *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015)).

When ruling on a Rule 12(b)(6) motion, the court must accept the allegations as true and "draw all reasonable inferences in favor of" the pleader. *Williams v. Kincaid*, 45 F.4th 759, 765 (4th Cir. 2022) (quoting *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016)). But the court does not accept "legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." *United States ex rel. Taylor v. Boyko*, 39 F.4th 177, 189 (4th Cir. 2022) (quoting *United States ex rel. Nathan v. Takeda Pharms. N. Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013)). Merely reciting a claim's elements "and supporting them by conclusory statements does not meet the required standard." *Sheppard v. Visitors of Va. State Univ.*, 993 F.3d 230, 234 (4th Cir. 2021) (quoting *ACA Fin. Guar. Corp. v. City of Buena Vista*, 917 F.3d 206, 212 (4th Cir. 2019)). The court "does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (quoting *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013)).

The court's review of a Rule 12(b)(6) motion typically is limited to the pleadings, documents attached to the complaint, and the parties' briefs. *See* Fed. R. Civ. P. 12(b)(6), 12(d); *see also* Fed. R. Civ. P. 10(c). The court also may consider judicially noticed facts and documents integral to and explicitly relied on in the complaint when their authenticity is not disputed. *See Zak*, 780 F.3d at 606–07; Fed. R. Evid. 201(b).

### III. Discussion

When Congress enacted the FCRA in 1970, it was concerned that consumer reporting agencies were "in too many instances . . . reporting inaccurate information that was adversely affecting the ability of individuals to obtain employment." *Dalton v. Cap. Associated Indus., Inc.*, 257 F.3d 409, 414 (4th Cir. 2001). The FCRA provision relevant here, 15 U.S.C. § 1681e(b), requires a consumer reporting agency to "follow reasonable procedures to assure maximum possible accuracy of the information" when it prepares a report on an individual. To state a claim for a violation of § 1681e(b), a plaintiff must sufficiently allege that "(1) the consumer report [prepared about them] contains inaccurate information and (2) the reporting agency did not follow reasonable procedures to assure maximum possible accuracy." *Dalton*, 257 F.3d at 415.

"A report is inaccurate when it is 'patently incorrect' or when it is 'misleading in such a way and to such an extent that it can be expected to [have an] adverse [ ]' effect." *Id.* (alterations in *Dalton*) (quoting *Sepulvado v. CSC Credit Servs.*, 158 F.3d 890, 895 (5th Cir. 1998)). "Thus . . . a consumer report that contains technically accurate information may be deemed 'inaccurate' if the statement is presented in such a way that it creates a misleading impression." *Saunders v. Branch Banking & Tr. Co.*, 526 F.3d 142, 148 (4th Cir. 2008).

With respect to whether the reporting agency followed reasonable procedures, the Fourth Circuit has cautioned that this question should be left to the jury "in the overwhelming majority of cases." *Dalton*, 257 F.3d at 416 (quoting *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995)). The plaintiff bears the burden of establishing that the consumer reporting agency failed to follow reasonable procedures. *Id.*

In its motion to dismiss, SentryLink argues only that Smith has not plausibly alleged the first element of a § 1681e(b) claim: that the consumer report was inaccurate. In its reply, however,

5

SentryLink argues for the first time that Smith also has failed to plausibly allege the second element: that it failed to use reasonable procedures to assure the accuracy of the information in the report. "The ordinary rule in federal courts is that an argument raised for the first time in a reply brief or memorandum will not be considered." *Clawson v. FedEx Ground Package Sys., Inc.*, 451 F. Supp. 2d 731, 734 (D. Md. 2006). "A contrary rule runs the risk of depriving a nonmovant [of] an opportunity to respond." *De Simone v. VSL Pharms., Inc.*, 36 F.4th 518, 531 (4th Cir. 2022). However, the court may, in its discretion, consider arguments first raised in a reply under certain circumstances, including when "counterarguments were addressed in the opposition." *Clawson*, 451 F. Supp. 2d at 734 (citing *United States v. Head*, 340 F.3d 628, 630 n.4 (8th Cir. 2003)). Smith devotes nearly three pages of his nine-page opposition to arguing that he has plausibly alleged that SentryLink used unreasonable procedures. The Court thus will consider SentryLink's arguments as to both the first and second elements of Smith's § 1681e(b) claim.

### A. Whether SentryLink's Report Was Inaccurate

SentryLink first argues that Smith has not plausibly alleged that its report was either incorrect or misleading. In support of this argument, SentryLink relies primarily on a case from the Eleventh Circuit, *Erickson v. First Advantage Background Servs. Corp.*, 981 F.3d 1246 (11th Cir. 2020).

In *Erickson*, the plaintiff, Keith Erickson, applied to coach his son's Little League team and authorized Little League to conduct a background check as part of the application process. *Id.* at 1248. Little League sent Erickson's name, date of birth, Social Security number, and home address to First Advantage, a consumer reporting agency with which it worked to research job applicants' criminal histories and sex-offender-registry records. *Id.* The database that First Advantage used to conduct this research did not contain sex offenders' complete dates of birth for

all jurisdictions. *Id.* at 1249. Thus, the agreement between Little League and First Advantage specified that for any jurisdiction where the database did not contain sex offenders' full dates of birth, First Advantage would "search for sex-offender records using only an applicant's first and last name." *Id.* When a "name-only" search came back with a hit, Little League would "review available demographic data from the relevant State's website before determining that a sex-offender record actually belong[ed] to an applicant." *Id.*

Though Erickson's record was "clean," his estranged father, with whom he shared a first and last name, was a registered sex offender. *Id.* at 1248. His father resided in a Pennsylvania jurisdiction where First Advantage conducted "name-only" searches, and so, when First Advantage searched for Erickson's first and last name in this jurisdiction, his father's record came back. *Id.* at 1249. In the background report that it prepared for Little League, First Advantage explained that it had found a sex-offender record matching Erickson's name, but cautioned that "This Record is matched by First Name, Last Name ONLY and may not belong to your subject. Your further review of the State Sex Offender Website is required in order to determine if this is your subject." *Id.* First Advantage further "directed Little League to Pennsylvania's sex-offender data to compare the 'demographic data and available photographs'" and even stated "that Little League might 'conclude that the records do not belong to' Erickson." *Id.*

Erickson sued First Advantage, alleging that it had violated § 1681e(b) in connection with its preparation of the background report. *Id.* at 1250. The case proceeded to a jury trial, but after Erickson rested, the district court granted First Advantage's motion for judgment as a matter of law, concluding in relevant part that Erickson had failed to establish that the report was inaccurate. *Id.* On appeal, the Eleventh Circuit affirmed, concluding that the report was neither factually incorrect nor misleading. The Court reasoned first that the report was not factually incorrect

7

because it "never assigned the sex-offender record to Erickson"; rather, it merely stated, correctly, that someone whose name matched Erickson's was a registered sex offender in Pennsylvania. *Id.* at 1252. Next, the court reasoned that the report was not misleading because a reasonable person in Little League's position—"that is, a user who had hired a consumer reporting agency to search an internal database for sex-offender records, knowing that some searches would be performed only by name and knowing that further research was required before attributing any of those matched records to a particular individual"—would know that it had to conduct further research before taking action against Erickson on the basis of the report. *Id.* at 1253.

The court cautioned, however, that its ruling was "not a license to caveat one's way out of liability for an affirmatively misleading report," stating that "large-print headlines or promises that are belied by the lengthy fine print at the bottom" or "vague equivocations like 'the criminal history cited may not be 100 percent accurate'" would not be enough "to save an otherwise misleading report." *Id.* The court simply concluded that in the present case, "the report's language made clear what the report was and was not, and it was prepared consistent with the expectations of the requester." *Id.*

SentryLink argues that Smith's § 1681e(b) claim must fail because the report in this case is "almost identical to" the report in *Erickson*. ECF 15, at 4. SentryLink insists that "[t]he report is not inaccurate because it is what it says it is—an alert that a 'Dustin Michael Smith' has criminal convictions in Champaign County, Ohio." *Id.* SentryLink further argues that the report is not misleading because it alerts the reader to the differences between the middle name or middle initial of the person with the convictions and the middle name of "Dustin Thomas Smith," the subject of the report. As SentryLink sees it, "[n]owhere on the consumer report is there any assertion that 'Dustin Michael Smith' was the same individual as [the] [p]laintiff. Rather, the report is merely

8

reporting as to the criminal history of 'Dustin Michael Smith.'" *Id.* SentryLink is wrong in its analysis.

*Erickson*, a non-binding, out-of-circuit decision, does not bear the weight that SentryLink places on it.[2] The Court agrees with SentryLink that the report appears to be technically correct in that Smith has not alleged that a person named "Dustin M" or "Dustin Michael" Smith does *not* have the criminal convictions listed in the report. But a report's technical correctness does not end the inquiry. Rather, the Court also must assess whether the report is "'misleading in such a way and to such an extent that it can be expected to [have an] adverse [ ]' effect." *Dalton*, 257 F.3d at 415 (alterations in *Dalton*) (quoting *Sepulvado*, 158 F.3d at 895). And at this preliminary stage, the Court concludes that it is plausible that the report prepared by SentryLink could be sufficiently misleading to have an adverse effect on Smith's employment prospects.

SentryLink's "National Criminal and Offense Report" purports to identify the criminal convictions and offenses of the applicant. The identified applicant is "Dustin Thomas Smith." The report lists Smith's date of birth and the last four digits of his Social Security number and states that all jurisdictions, "including sex offender registries," were searched. The next seven pages of the report list 15 criminal convictions for a "Dustin M" or a "Dustin Michael" Smith; none of the entries specifies the Social Security number or date of birth of the convicted person. Unlike the report in *Erickson*, which specified that the sex-offender record had been returned via a name-only

---

[2] At least one judge in this district has concluded that the *Erickson* Court, in sanctioning the report at issue in that case, contravened both the text of § 1681e(b) —"which requires 'maximum possible accuracy' rather than mere technical accuracy"—and promulgated a holding inconsistent with *Dalton*'s directive that a report is inaccurate when it is sufficiently misleading to have an adverse effect. *See Fernandez v. RentGrow, Inc.*, 341 F.R.D. 174, 192 (D. Md. 2022), *vacated and remanded on other grounds*, 116 F.4th 288 (4th Cir. 2024). This Court need not decide whether *Erickson* is consistent with § 1681e(b) or with Fourth Circuit precedent, because even if it is, the report here is distinguishable from the report at issue in *Erickson*.

search, SentryLink's report does not explain how the preparer of the report obtained the criminal records included therein. It is certainly plausible that a reader of the report could reasonably conclude, based on the heading, that SentryLink obtained the records in the report by conducting a search that included, not just Smith's name but also his date of birth and Social Security number as search parameters. If so, then the reader might reasonably disregard the discrepancies in the middle name—by, for instance, chalking them up to a name change—and conclude that the records nonetheless belonged to Smith because they were associated with his date of birth and Social Security number. Moreover, unlike the report in *Erickson*, the report here did not state that the "Dustin M" or "Dustin Michael" Smith might not be the same person as Dustin Thomas Smith. Nor does the report instruct the reader to conduct further research to verify whether the two people are the same. The report's advisement to the reader about the discrepancies in the middle name or middle initial ("Please note middle name [or initial] on record") does not necessarily alert the reader that the person who sustained the conviction may not be the applicant. When these curt advisements are considered in the context of the entire report—which appears to associate the listed criminal convictions with Smith's date of birth and Social Security number—they could be viewed as an attempt by SentryLink to "caveat [its] way out of liability for an affirmatively misleading report." *See Erickson*, 981 F.3d at 1253. Smith has alleged sufficiently that SentryLink's report is misleading and inaccurate. This case is not, as SentryLink thinks, "identical to" *Erickson*. *See* ECF 15, at 4.

SentryLink's reliance on *Erickson* is misplaced for another reason: *Erickson* was decided after discovery and the plaintiff's presentation of his case at trial, and the affirmance of the court's grant of judgment as a matter of law turned in part on evidence concerning the expectations of Little League—the organization that ordered the report from First Advantage. *See Erickson*, 981

F.3d at 1253 (concluding that "[a] reasonable user of the report standing in the shoes of Little League—*that is, a user who . . . [knew] that some searches would be performed only by name and . . . that further research was required before attributing any of those matched records to a particular individual*" would not find the report misleading) (emphasis added). Here, a scheduling order has not yet issued so no discovery has taken place. After discovery commences, the parties will have an opportunity obtain evidence about RTEC's expectations regarding the report it ordered from SentryLink, whether RTEC was aware of SentryLink's search methodology, and whether RTEC knew that it would need to conduct additional research before matching the criminal records to Smith. Thus, it is possible that, with the benefit of discovery, this case may be factually similar to *Erickson*. But at this preliminary stage in the litigation, Smith has pleaded sufficient facts to plausibly allege that the report was "presented in such a way that it create[d] a misleading impression" and was thus inaccurate. *See Saunders*, 526 F.3d at 148.

### B. Whether SentryLink Followed Reasonable Procedures

SentryLink also argues that Smith fails to plausibly allege that it did not employ "reasonable procedures to assure maximum possible accuracy," *Dalton*, 257 F.3d at 415, in connection with its preparation of the report. The Court disagrees.

Smith does not claim to have actual knowledge of the procedures used by SentryLink in compiling its report. Rather, he claims that SentryLink's report is so obviously and verifiably inaccurate that SentryLink must not have used reasonable procedures in preparing it. *See* ECF 13, at 3 ("The derogatory inaccuracies appear to be caused by [SentryLink] failing to properly review and interpret the relevant public records. Any rudimentary inspection of the public record would reveal the inaccuracies, and show that there is a middle name discrepancy, address discrepancy, and other discrepancies in the personal identifying information.").

At this preliminary stage, Smith has plausibly alleged that SentryLink did not use reasonable procedures to ensure that the report was as accurate as possible. Smith lives and applied for a job in Kentucky, and he asserts that his middle name and address are a matter of public record that would be available to SentryLink upon "rudimentary" inspection. *Id.* Nevertheless, SentryLink produced a report that appears to attribute to Smith 15 criminal convictions—all from the same county in Ohio, belonging to someone with a different middle name. That SentryLink produced this report and sent it to RTEC plausibly suggests that SentryLink did not cross-check the report's contents against information that was readily available to it. Taking Smith's allegations as true, the Court finds that Smith has plausibly alleged that SentryLink failed to take reasonable steps to verify the accuracy of the report's contents.

Moreover, the Court is hesitant to dismiss Smith's claim at this stage because the Fourth Circuit has admonished that "in the overwhelming majority of cases," whether the reporting agency followed reasonable procedures is a jury issue. *See Dalton*, 257 F.3d at 416 (quoting *Guimond*, 45 F.3d at 1333). Indeed, courts in this district have allowed § 1681e(b) claims to proceed on arguably more meager allegations than Smith's. *See, e.g.*, *Jones v. Equifax Info. Servs. LLC*, No. PX-24-1271, 2025 WL 2299415, at *3 (D. Md. Aug. 8, 2025) (concluding that where a complaint alleged that a report's error arose from the agency's "failure to follow 'reasonable procedures,'" the allegations, though "thin," were sufficient to survive a motion to dismiss in light of *Dalton*). Smith has thus plausibly alleged that SentryLink failed to follow reasonable procedures.

Smith has stated a FCRA violation under 15 U.S.C. § 1681e(b).

### IV.  Conclusion

SentryLink's motion to dismiss is denied. A separate Order follows.

Date: November 26, 2025

/s/
Deborah L. Boardman
United States District Judge